## EXCISE BOARD OF TULSA COUNTY et al. v. CITY OF TULSA.

No. 27620.    April 20, 1937.

Rehearing Denied June 8, 1937.

Dixie Gilmer, County Atty., and Fred A. Fulghum and John F. Conway Assts. County Atty., for plaintiffs in error.

H. O. Bland, E. M. Gallaher, and Milton W. Hardy, for defendant in error City of Tulsa.

C. H. Rosenstein (Silverman & Rosenstein, of counsel), for defendant in error Board of Education of the City of Tulsa.

WELCH, J. This is an appeal from an

order of the district court of Tulsa county granting a writ of mandamus requiring the excise board of that county to allocate or apportion the limit of ad valorem tax levy under the provisions of the 1933 amendment to section 9, article 10, of the Constitution. The trial court ordered the excise board to so adjust its order of allocation that the limits allowed to Tulsa county, the Tulsa school district, and the city of Tulsa would equal a total of 15 mills, and the excise board has appealed from such order.

The material facts are that on August 3, 1936, the excise board, by general order, allocated to Tulsa county 5.386 mills, to the city of Tulsa 4.581 mills, and to the Tulsa school district 4.392 mills, the effect of which appears to have been intended to limit the three subdivisions of government not to exceed 14.359 mills. The record discloses that at the time and in the manner provided by law the three subdivisions of government had duly filed their several estimates of current needs, which, if allowed in full, would require a total levy of more than 15 mills.

The sole question presented to the trial court was whether or not it was the duty of the excise board, by reason of the provisions of the 1933 amendment to section 9, article 10, of the Constitution, to divide the total 15-mill limit of levy provided therein among the various subdivisions of government, or whether that board is authorized by virtue of the constitutional provisions to limit said subdivisions of government to a total less than 15 mills. Incidentally with this question there also arose the question of the power and authority of the courts to inquire into or review any action which might be taken by the excise board in connection therewith.

Section 9, article 10, of the Constitution, before amendment, provided as follows:

"Except as herein otherwise provided, the total taxes, on ad valorem basis, for all purposes, state, county, township, city or town, and school district taxes, shall not exceed in any one year thirty-one and one-half mills on the dollar, to be divided as follows:

"State levy, not more than three and one-half mills; county levy, not more than eight mills; Provided, that any county may levy not exceeding two mills additional for county high school and aid to the common schools of the county, not over one mill of which shall be for such high school, and the aid to said common schools

shall be apportioned as provided by law; township levy, not more than five mills; city or town levy, not more than ten mills; school district levy, not more than five mills on the dollar for school district purposes, for support of common school; Provided, That the aforesaid annual rate for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase."

That part of the 1933 amendment here involved provides as follows:

"Except as herein otherwise provided, the total taxes for all purposes, on an ad valorem basis, shall not exceed, in any taxable year, fifteen (15) mills on the dollar, to be apportioned between county, city, town and school district, by the county excise board, until such time as the regular apportionment is otherwise provided for by the Legislature."

The provision before amendment was a limitation of levy not to exceed 31½ mills. The language of the amendment is a clear limitation of levy not to exceed 15 mills, the amendment changing the limit from 31½ mills to 15 mills.

We observe that in the provision before amendment the framers of the Constitution themselves assumed the duty of particularizing or dividing the 31½-mill limit of levy between the various subdivisions of government, and they did so in the manner and by the language quoted.

The amendment, after providing for the total 15-mill limitation, continues as follows:

"* * * to be apportioned between county, city, town and school district, by the county excise board, until such time as the regular apportionment is otherwise provided for by the Legislature."

We take it this language was employed in recognition of the fact that some further details of the 15-mill limitation might be and should be added thereto. The people themselves did not specifically provide how the 15 mills should be divided or apportioned, as did the framers of the original constitutional provision. In the amendment the people delegated authority to the excise board to "apportion" or particularize the amendment by further apportioning or dividing the fixed total limit. The words of the amendment last above quoted grant authority to the excise board to divide or apportion the 15-mill limit,

and that authority was fully upheld in Atchison, T. & S. F. Ry. Co. v. Excise Board of Washington County, 168 Okla. 619, 35 P. (2d) 274.

Webster's International Dictionary defines the word "apportion" to mean "to divide and assign in just proportion. To divide and distribute proportionately." It is thus seen that the power delegated to the excise board is to divide the 15-mill limit between county, city, town, and school districts. To divide a thing between three municipal subdivisions of government necessarily excludes the idea of withholding any part of the thing. The power to divide, apportion or distribute a thing does not include the power to withhold any portion of the same.

The excise board contends for the right to withhold from apportionment as much of the 15-mill limit as such board may desire, thereby further reducing the limit of levy and fixing it at any desired number of mills less than 15, by merely declining to apportion all of the 15-mill limit.

The amount here withheld from apportionment was only a fraction of one mill, but it is readily apparent, and is admitted in oral argument, that if this authority is with the excise board, then the authority exists to withhold 12 mills of the 15-mill limit and apportion only three mills; or to apportion only such portion of the 15-mill limit as is desired and withhold the balance from any apportionment.

We cannot conceive that it was the intention of the people of the state, when adopting such amendment, to place in the hands of any board authority to materially change the primary purpose and object of the amendment itself, that object being as heretofore noted, a limitation to 15 mills. It would in our opinion be a strained construction of the specific wording of the amendment itself. The words of the amendment lead more readily to the conclusion that it was the intention of the people for the time therein provided to permit the excise board to complete or add to the amendment a necessary or desirable element of detail, that of apportionment or division of the limit.

The excise board contends not only for the right and power above stated, but contends further that when it has acted and apportioned any desired number of mills less than 15, its action in that regard is the exercise of a final legislative power, conclusive upon the courts, and not subject to any judicial review.

To sustain this contention there are cited decisions of this court holding that acts of the Legislature are binding on the courts. We do not find them in point here. In this amendment authorizing the excise board to apportion the 15-mill limit of levy, we find nothing to indicate that the apportionment order is to have the same finality and conclusiveness upon the courts as would a valid act of the Legislature passed and approved in the required manner.

We therefore conclude that under the 1933 amendment of section 9, article 10, of the Constitution, the only power granted to the excise board is to divide the total 15-mill limit of levy between the various subdivisions of government as therein enumerated. Although in doing so it may have broad power, it does not necessarily follow that the excise board in its action so taken acts in such a legislative capacity as is contended by the excise board here. We are not favored with authorities supporting such contention, and we do not accept the same as true.

Whatever may be the nature of its action, we cannot subscribe to the apparent suggestion advanced, that the people by the amendment intended to set up a new or separate branch of government which would not be amenable to the process of the courts. The mandate to the excise board which is contained in the amendment is to apportion or divide the 15-mill limit between the several subdivisions of government therein named. Here the excise board failed to perform its clear and mandatory constitutional duty, and the trial court's judgment for plaintiff was without error.

Although we have concluded that the excise board failed in the performance of its clear duty, and that the trial court committed no error in so holding and in adjudging plaintiff entitled to the writ of mandamus, our attention is now called to the fact that the judgment of the trial court was not in fact complied with; that the levies have heretofore been made by the several municipal subdivisions of Tulsa county in accordance with the original order of apportionment made by the excise board. The taxes so levied now have been spread upon the tax rolls of the county and the collection of same has long since been in progress. It is suggested, and apparently conceded by the parties, that a

great portion of the taxes has been collected. To require the excise board at this time to withdraw or amend the appropriations and levies heretofore made would, aside from meeting with possible serious legal difficulties, unquestionably operate to cause serious and grievous confusion and complications. This court at an early date was confronted with a situation quite similar to the situation presented by the facts here, in the case of Board of Excise of Oklahoma County v. Board of Directors of School Dist. No. 27 of Oklahoma County, 31 Okla. 553, 122 P. 520. The court held in the second paragraph of the syllabus as follows:

"In awarding or denying writs of mandamus, courts exercise judicial discretion, and are governed by what seems necessary and proper to be done, in the particular instance, for the attainment of justice, and, in the exercise of such discretion, may, in view of the consequences attendant upon the issuance of the writ, refuse the same, though the petitioner has a clear legal right, for which mandamus is an appropriate remedy."

We consider the rule there stated controlling upon the court here, and under the facts now before us we think there can be no reasonable question but that at this late date in the fiscal year the writ should not now be permitted to issue. See, also, Lowden v. Caddo County Excise Board, 176 Okla. 213, 55 P. (2d) 472; Greer County Excise Board v. Lowden, 177 Okla. 7, 57 P. (2d) 612; Board of Education of City of Guthrie v. Logan County Excise Board, 86 Okla. 24, 206 P. 517, and Webster v. Morris, 129 Okla. 145, 264 P. 190, and others to the same effect.

The city of Tulsa urges that at the time the trial court granted the writ the condition which we have mentioned did not exist, and that the delay has been occasioned by the failure of duty of the excise board. If we agree with the city in this respect, we still would not feel that our conclusion should be affected thereby. The writ must now be withheld by reason of the necessities of the circumstances and by reason of great public harm and confusion which would otherwise result, and that result is the same regardless of what may have occasioned such result. We have lent aid in connection with the controversy to the fullest extent which appears to us possible under the circumstances, by determining the issues presented upon the merits, on account of the fact that an important public question is involved.

The judgment of the trial court is affirmed, but modified to the extent of directing the trial court that the writ of mandamus be now withheld for the reasons above stated.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS, CORN, and HURST, JJ., concur. RILEY and GIBSON, JJ., dissent. BUSBY, J., absent.