José, Carmen, María Magdalena, Antonia, Francisca, Luisa and Guillermo Rubert Armstrong, and Antonia Armstrong Widow of Rubert, Plaintiffs and Appellees, *v.* Rafael Sancho Bonet, Treasurer of Puerto Rico, Defendant and Appellant.

No. 8144. Argued February 25, 1941.—Decided March 10, 1941.

*George A. Malcolm,* Attorney General, and *R. García Cintrón, Assistant Attorney General,* for appellant. *Henry G. Molina,* for appellees.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

This is an appeal from a judgment on the complaint rendered by the District Court of San Juan in an action for the recovery of taxes paid under protest. The facts alleged in the complaint were admitted by the defendant and the case was submitted to the lower court, by stipulation of the parties, to be decided exclusively on the question of law raised by the parties. The facts of the case are as follows:

The Municipal Assembly of Río Piedras passed on February 23, 1937, an ordinance levying during the economic year 1937–38 an additional tax of one-half of one per cent on all property, movable or immovable, situated within the territorial boundaries of the Municipality of Río Piedras. The ordinance was approved by the mayor on February 24, 1937; published in the newspaper *"El País"* during the week of February 25 to March 3; submitted to the Executive Council on March 5 and approved by said body on March 23, 1937. Plaintiffs appellees, owners of two properties in the Municipality of Río Piedras, paid on May 27, 1938, taxes to the amount of $2,503.82, of which sum $556.42—the amount of the additional tax object of the ordinance—was paid under protest, it being alleged that said additional tax was illegally collected because the above mentioned ordinance was null and void due to the fact that it had been approved in violation of the provisions of Section 46 of the Municipal Law in force (No. 53 of 1928, page 334). The two causes of nullity submitted to the lower court (the other causes alleged in the amended complaint were renounced by the plaintiffs) were the following:

A.—That the ordinance was not in the hands of the Treasurer of Puerto Rico duly approved by the Executive Council, on or before the 15th of March, 1937, as Section 46, supra, provides.

B.—That the ordinance provided that the special fund created by Section 2 should be applied for purposes other than those authorized by Section 46, paragraph *c*-2.

Defendant appellant charges the lower court with the commission of five errors, as follows:

"*First*.—Deciding that the taxes paid under protest could be collected under Act No. 8 of 1927, providing a procedure for the recovery of taxes paid under protest.

"*Second*.—Deciding that there was no need of including the Municipality of Río Piedras as a defendant.

"*Third*.—Holding that the fact that the ordinance in question was not in the hands of the Treasurer of Puerto Rico on or before the 13th of March 1937, was a fatal mistake.

"*Fourth*.—Holding that the ordinance in question devoted that special tax to purposes not authorized by Section 46 of the Municipal Law.

"*Fifth*.—Giving judgment for plaintiffs, and condemning the defendant to return to the plaintiffs the sum paid under protest and its legal interest, and to pay the costs of the suit."

The first two errors refer to the fact that the lower court overruled the demurrers filed against the original complaint, and reproduced in the answer to the amended complaint, alleging lack of facts sufficient to constitute a cause of action and a nonjoinder of party defendant because of the failure to include the Municipality of Río Piedras as a defendant.

▆▆▆ Appellant maintains that there is no law in Puerto Rico authorizing the return of money paid because of the additional tax levied by the Municipality of Río Piedras, since Act No. 8 "providing for the payment of taxes under protest; establishing a procedure to authorize the collection and return thereof", approved on the 19th of April, 1927, (Laws of 1927, page 122) does not include said additional tax which appellant compares to the "special assessments" of the Continental jurisprudence in order to distinguish it from general taxes. Let us see if the appellant is right.

Section 1 of Act No. 8 of 1927, *supra,* reads as follows:

"Whenever a taxpayer believes that he should not pay *any tax or part thereof,* he shall, however, be obliged to pay the same in full upon request of the collector of internal revenue of his district, or of the official in charge of the collection of taxes, and shall he de-

sire to make any claim, shall ask the said collector or the said official in charge of the collection of taxes, on making payment, to endorse the tax receipt, specifically stating whether the said protest refers to the whole or to a part of the tax paid under protest, and setting forth the exact amount protested. The said endorsement shall be signed by the taxpayer and by the collector or officer in charge of the collection of taxes.'' (Italics supplied.)

And Section 3 provides in part that:

''Section 3.—A taxpayer who shall have paid under protest the whole or part of *any tax* may, within the term of one year from the date of payment, *sue the Treasurer of Porto Rico in an insular court of competent jurisdiction,* or in the District Court of the United States for Porto Rico, to secure the return of the amount protested. The Attorney General shall represent the Treasurer of Porto Rico in such suits. Upon the filing of the complaint, if it be filed in an insular court, it shall follow the procedure, conditions and requirements provided by the Code of Civil Procedure in an ordinary action. . . .'' (Italics supplied.)

As we can see the statute, in its first Section, authorizes the taxpayer to pay under protest ''any tax or part thereof'', and in its third Section to ''sue the Treasurer of Porto Rico in an insular court of competent jurisdiction.''

The tax whose validity has been attacked was levied by the Municipality of Río Piedras in accordance with paragraph *c* of Section 46 of the Municipal Law of 1928 (Laws of 1928, pages 334, 374), which provides in part as follows:

''Section 46.—The municipal revenue shall consist of—

'' (*a*) . . . . . . .

'' (*b*) . . . . . . .

'' (*c*) *Any surcharge of the tax on taxable property of the municipality,* provided it shall be so decided by at least two-thirds of the total membership of the municipal assembly. Ordinances imposing these surcharges shall require the approval of the Executive Council, on report of the Treasurer of Porto Rico. The said surcharge shall not exceed one per cent on the assessed value of the property, computing therein any additional tax on the said valuation for municipal purposes at present authorized or authorized in the future. Said ordinances shall be posted to the public for a pe-

riod of not less than twenty days and published twice a week in a newspaper of wide circulation in Porto Rico before being submitted to the Executive Council. Said surcharge or additional tax on the assessed value of the property, may be devoted only to the following purposes:

"(1) . . . . . . .

"(2) The *development* of public education, the *construction* of roads, waterworks, sewerage systems, hospitals with their equipment and maintenance, cemeteries, charitable asylums, sanatoriums, asylums for the insane and reform schools, market places, slaughter houses, meat markets, docks and bulkheads, school houses and houses for teachers, agricultural farms, houses for sale on long terms to workmen, dikes to prevent inundations, public laundries and buildings for municipal offices; *constructing paving and asphalting* streets, parks and plazas, and *planting of trees* thereon, *construction* of roads and vicinal roads, *establishment of villages* and *construction* or *installation* of electric plants and the purchase of land for the purposes herein set forth.

"*Such surcharge or additional tax on the assessed value of property shall be collected by the Treasurer of Porto Rico,* a certified copy of the ordinances adopted by the municipal assembly in the form set forth in subdivision (*c*) of this section, to serve as authorization for the purpose, to be levied on the basis of the assessment made by the Department of Finance.

"*The said surcharge or additional tax on the assessed value of property,* when it is to be applied to the purposes specified in paragraph (2) of this section, may be levied solely for the fiscal year succeeding that in which the respective ordinance is adopted; but when it is to be applied to the payment of loans, with interest thereon, —paragraph (1) of this section—it may be levied for such years as may be necessary until the total redemption of the said loan and the interest thereon. In no case shall this surcharge or additional tax on the assessed value of property be collected in the same fiscal year in which it is voted by the municipal assembly and approved by the Executive Council. Any ordinance of a municipal assembly levying any additional tax, including that known as school tax, on the assessed value of property, *shall be in the hands of the Treasurer of Porto Rico, duly approved by the Executive Council, on or before the fifteenth day of the month of March. . . .* " (Italics supplied.)

The statute refers to "surcharge of the tax on taxable property", and to "surcharge or additional tax on the assessed value of property", the phrase *"recargo o contribución adicional sobre la valoración de propiedad,"* being used in the Spanish text. It does not authorize the municipalities to levy a special assessment upon specific property, but merely an increase of surcharge upon general tax already levied on the property.

■ Let us now examine the definition of a "special assessment" in order to determine its scope. In 44 C. J. 481, Section 2806, a special assessment is defined as follows:

"Special assessments are special charges imposed by law *on land* to defray the expenses in whole or in part of a local improvement made by a municipality, on the theory that the owner of the property has received special benefits from the improvement in excess of the benefits accruing to the general public."

And on page 483 it is said:

"Local assessments can be levied on land only and not on personal property."

In 26 R.C.L. 40, Section 24, the rules governing special assessments are set forth as follows:

"In some instances, however, a particular public improvement, while enhancing the general public convenience to a certain extent, is so peculiarly advantageous to a definite territory which does not happen to coincide with one of the existing political subdivisions of the state that it is deemed more just to assess the cost of the improvement upon the benefited area than to include it in the general tax levy upon the entire community. For example, the cost of a bridge is sometimes imposed upon certain designated counties and towns, and in other cases quasi corporations called districts are created to support the schools, to furnish a water supply or to provide for the extinguishment of fires in the territory embraced in the district. . . . One step farther takes us to the true special assessment, or betterment tax as it is sometimes called, by which the whole or a part of the cost of a particular improvement is assessed on the territory benefited by the improvement in proportion to the benefit received *by each parcel* of land within such territory." (Italics supplied.)

In the case of *Chicago M. & St. Ry. Co.* v. *Phillips,* 82 N.W. 787, it was held that the assessment of all the prop- erty of a railway in order to pay the construction of a culvert was null and void because of its being a tax upon the company's movable property, since only immovable prop- erty may be assessed for such a purpose. See besides, the case of *Illinois Central Railroad* v. *Decatur,* 147 U.S. 190, 37 L. ed 132, and 1 Cooley on Taxation 142, Section 51, (Fourth ed.).

In the case of *Anaheim Sugar Co* v. *Orange County,* 181 Cal. 212, 216, 183 Pac. 809, 811, it was said:

"Where, as here, therefore, the burden is imposed upon all of the property in the district, real and personal, according to its value and not upon the basis of special benefit, it is clear that the Legis- lature regarded the burden as a general tax, and not as a special as- sessment. This is so, even though the tax be imposed for the pur- pose of constructing a public improvement which may confer greater benefits on one class of persons or property than on another."

This same doctrine was approved in the case of *American Co.* v. *City of Lakeport,* 32 P. (2d) 622, 627, in which case it was held that "where . . . the burden is imposed upon all of the property in the district, real and personal, according to its value and not upon the basis of special benefit, it is clear that the Legislature regarded the burden as a general tax, and not as a special assessment."

The ordinance approved by the Municipality of Río Pie- dras does not levy a special assessment upon certain proper- ties within the municipality which may be benefited more than others by the works to be executed with the product of the additional tax which is levied by it. What it does is to levy the tax upon all the real and personal property sub- ject to the payment of taxes within the territorial boundaries of the municipality. It is a surcharge on the tax already levied (according to the provisions of Section 46 of the Municipal Law, *supra*) and not a special tax within the mean- ing that "special assessments" have in the Continental deci-

sions, since this is not only of general character with respect to real property but it includes both personal and real property, and we have already seen that said special assessment may not be levied upon personal property.

In the case of *Yabucoa Sugar Co.* v. *Municipality of Yabucoa,* 33 P.R.R. 348, 349, this Court expressed itself, in part as follows:

"We are inclined to the view that the court below was correct in saying that if the collection of the tax imposed is to be made *by the Treasurer of Porto Rico, the plaintiff may avail himself of the remedy of making the payment under protest and bring the necessary action for the return thereof, if the said tax is illegal, excessive or erroneous.* Act No. 17 of May 13, 1920." (Italics supplied.)

We feel that the time has arrived to decide that, as the special remedies granted by the Municipal Law in Section 83, to annul or review through a writ of certiorari any legislative or administrative act, or to enjoin through a writ of injunction the acts of municipal employees, are not exclusive, and that, as a tax levied in the case was collected by the Treasurer of Puerto Rico, the plaintiff could pay under protest and bring this action under Act No. 8 of 1927, *supra,* and as a consequence he did not have to include the Municipality of Río Piedras as a party defendant.

The lower court did not err in overruling the demurrers, and therefore the first two errors assigned by the appellant are dismissed.

The third error refers to the fact that the lower court held that the provision of the Municipal Law that the ordinance should be in the hands of the Treasurer of Puerto Rico on or before the 15th of March, 1937, is mandatory and that the defendant having admitted that the ordinance was approved by the Executive Council on March 23 of said year and later sent to the Treasurer, the provisions of the statute were not complied with.

It is with respect to tax statutes that the question has been raised most frequently whether specific words and terms

used in them should be considered mandatory or merely directive. The general rule, however, is to the effect that when the requirements established by the statute have as their purpose the regulation of the conduct of public officials and do not affect the rights of the taxpayer, the words used are directive and not mandatory. The general rule was set forth by the Supreme Court of the United States in the case of *French* v. *Edwards,* 80 U.S. 506, 511, 20 L. ed. 702, in the following words:

"There are undoubtedly many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such generally are regulations designed to secure order, system, and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated."

In 2 Cooley on Taxation 1143, Section 512, it is said:

"So in general the fixing of an exact time for the doing of an act is only directory where it is not fixed for the purpose of giving the party a hearing, or for any other purpose important to him."

And likewise it was held in the case of *Walker* v. *Edmonds,* 197 Pa. 645, 47 Atl. 867, that:

"Where action is required to be taken within a certain time, the mere failure of an officer or of a body to act within the set time is not fatal, and the requirement as to time may be held to be directory."

The provision of our Municipal Law, that municipal ordinances levying a surcharge on the tax must be in possession of the Treasurer of Puerto Rico before the 15th of March, is so that said official may have time to set up the machinery for the collection of said taxes before the next fiscal year which begins on the first of July. The fact that the ordinance comes in the possession of the Treasurer of Puerto

Rico before or after the 15th of March in no way affects the substantial rights of the taxpayer and the fact that in the case at bar the ordinance reached the Treasurer after said date does not affect its validity, contrary to what the lower court held. The third error assigned therefore was committed but it does not carry with it the reversal of the judgment rendered by the lower court, as we will see upon deciding the fourth error.

 This error refers to the fact that the lower court held that the ordinance was null and void because the taxes imposed by it were to be devoted to purposes not authorized by Section 46 of the Municipal Law.

Said Section in its paragraph (c), *supra,* declares that the municipal income shall consist, among other things, of any surcharge of the tax on taxable property of the municipality, which surcharge may only be devoted to the purposes which the statute specifically points out, among others, the *construction* of roads, waterworks, sewerage systems, market places, office buildings, cemeteries, etc.

The second section of the ordinance provides that the amount collected shall be entered in the special funds to be applied to the following purposes:

". . . construction and *repairing* of municipal buildings, including school houses, *repairing* and conservation of streets, sidewalks and roads, expansion and repairing of the sewerage system, purchase of equipment and upkeep of the municipal hospital; extending the cemetery, *improvements* in the market place and slaughter house, purchase of equipment for the fire station; *public works in general whose cost cannot be included in the budget for ordinary funds.*" (Italics supplied.)

The lower court held that the Municipality of Río Piedras was not empowered to levy an additional tax to be devoted to repairs of any kind or to extending the cemetery, improvements of any kind, purchase of equipment for the fire station or of public works in general, and instead could only devote the proceeds from said tax to the works enumerated in subdivision (c).

There is no doctrine more firmly established by the authorities and the decisions than that which holds that municipal corporations can only exercise those powers which the legislature has expressly conferred upon them. This is particularly so with respect to the grant of power to levy taxes, and the construction of the statute granting said power must be restricted, since the citizen may not be burdened with a tax not expressly authorized by law. This doctrine is applicable not only to municipal corporations but to the government in general. In the case of *Gould* v. *Gould,* 245 U.S. 151, 153, the rule was set forth in the following words:

"In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt *they are construed most strongly against the Government, and in favor of the citizen."* (Italics supplied.)

See, besides, *Best* v. *City of Birmingham,* 78 So. 100; *Rodenbough* v. *U. S.,* 25 F. (2d) 13; 6 McQuillin Municipal Corporations 334.

In 61 C.J. 571 it is said:

"Where the statute provides or designates separately the different purposes for which taxes may be levied, . . . *such requirement is regarded as mandatory, . . .* " (Italics supplied.)

Lastly in the case of *City of De Land* v. *Florida Pub. Serv. Co.,* 161 So. 735, it was held that an ordinance levying taxes must be considered in its totality to determine its validity and if after due consideration, it is apparent that it is unreasonable and invalid, the court may declare it null and void in its totality without *having to discard those parts which are invalid and enforcing the rest.*

After examining the ordinance object of this litigation by the light of the doctrine set out above, we can only reach one conclusion and that is that the Municipal Assembly of Río Piedras went beyond the power conferred upon it by

the Legislature. It did not limit itself in said ordinance to declare that the tax would be devoted to some of the purposes authorized by the Municipal Law but instead it broadened them, and where the statute authorizes the construction of certain works, it added ''repairing'' in some cases and ''expansion'' and ''improvements'' in others. It provided furthermore for the purchase of equipment for the fire station, an item which is not included in paragraph (c) of Section 46, *supra*, and, lastly, it included the broad phrase ''public works in general whose cost cannot be included in the budget for ordinary funds.''

Under this last provision, the Municipality of Río Piedras could devote the funds collected to any purpose which it might consider a ''public work'' without having to limit itself to any other works specifically mentioned in the statute. We are convinced, by the context of the Municipal Law that the intention of the Legislature was not to delegate general powers to the municipality to levy surcharges on taxes but instead to limit said powers to those specifically enumerated in paragraph (c) of Section 46, *supra*. The maxim *''expressio unius est exclussio alterius''* is, therefore, applicable.

We are of the opinion that the ordinance in question is null and void, particularly because of the broad phrase herein mentioned, and that the lower court did not commit the fourth error, and, therefore, did not commit the fifth, either, and for these reasons the judgment appealed from must be affirmed.